IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHARLES M. PARSON,

        Plaintiff,

-v-                                  CASE NO.:

UNITED STATES OF AMERICA,
ORANGE PARK MEDICAL CENTER,
INC., BRYCE TILLER, M.D., and
JACKSONVILLE EMERGENCY
CONSULTANTS, P.A. d/b/a TITAN
EMERGENCY GROUP,

        Defendant.

_____/

## COMPLAINT

COMES NOW, the Plaintiff, CHARLES M. PARSON, (hereinafter "MR. PARSON") by and through his undersigned counsel, and hereby sues the Defendants, UNITED STATES OF AMERICA, ORANGE PARK MEDICAL CENTER, INC., (hereinafter "ORANGE PARK MEDICAL CENTER") BRYCE TILLER, M.D. (hereinafter "DR. TILLER") and JACKSONVILLE EMERGENCY CONSULTANTS, P.A. d/b/a TITAN EMERGENCY GROUP, (hereinafter "TITAN") and alleges as follows:

## GENERAL ALLEGATIONS

1.    This is an action against the UNITED STATES OF AMERICA under the Federal Tort Claims Act, 28 U.S.C. § 2671, et. seq. as hereinafter more fully

appears, and against ORANGE PARK MEDICAL CENTER, INC., BRYCE TILLER, M.D. and JACKSONVILLE EMERGENCY CONSULTANTS, P.A. d/b/a TITAN EMERGENCY GROUP, pursuant to Chapters 766, 768, *Fla. Stat.,* Florida Administrative Code and the Fla.R.Civ.P. 1.650.

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1346 (b) (1) in that it involves a claim for personal injury caused by the negligence or wrongful act or omission of employees of the UNITED STATES OF AMERICA and those for whom the UNITED STATES OF AMERICA bears responsibility.  This includes the UNITED STATES OF AMERICA VA, the Malcom Randall VA Medical Center, their employees, and those with whom they contracted and/or assigned to perform health care and administrative services for MR. PARSON.

3.     Dr. James Steele, Dr. Robert D. Carroll, Dr. William J. Triggs, Dr. Jerzy Rokicki, Dr. Richard  J. Lester, Dr. Maryam Rahman, nurse Christopher L. Wall, nurse Alfred W. Kuntz and all other medical providers and administrative staff who provided or were obligated to provide medical care and attention and administrative support to MR. PARSON while he was a patient at the Malcom Randall VA Medical Center were either employed by the UNITED STATES OF AMERICA VA, the Malcom Randall VA Medical Center or were contracted  with  them or assigned by them to provide medical services and administrative support at the Malcom Randall VA Medical Center.

4.     Dr. James Steele, Dr. Robert D. Carroll, nurse Christopher L. Wall, Dr. William J. Triggs, Dr. Jerzy Rokicki, Dr. Richard J. Lister, and Dr. Maryam Rahman, and all other medical care providers and administrative staff who provided or were

2

obligated to provide medical care and/or treatment and administrative services to MR.

PARSON, while he was a patient at the Malcom Randall VA Medical Center, were

working within the course and scope of their employment and/or described relationship

with the UNITED STATES OF AMERICA VA, Malcom Randall VA Medical Center.

As such, the UNITED STATES OF AMERICA is vicariously liable for any of their

negligent conduct.

5.      On or about July 25, 2013, a Form 95 Administrative Claim (attached as

Exhibit A) was sent to the Department of Veterans Affairs, Office of Regional Counsel,

Malcom Randall VA Medical Center, 1601 SW Archer Road, Mailing Code 573-00C,

Gainesville, Florida 32608, alleging medical malpractice.   More than six (6) months

have passed since the administrative claim was presented.

6.      Under 28 U.S.C. 2679(d), Plaintiff can elect to treat the claim denied if

the UNITED STATES OF AMERICA has not formally denied the claim within the

appropriate statutory time.  A claim denial has not been received.  As such, the claimant

is entitled to file this suit.

7.      That all conditions precedent to the bringing of this action against the

UNITED STATES OF AMERICA have been performed or waived, pursuant to the

provisions of 28 U.S.C. Section 2675, and pursuant to Chapters 766 and 768, *Fla. Stat.*

8.      That all conditions precedent to the bringing of this action against

ORANGE PARK MEDICAL CENTER, INC., BRYCE TILLER, M.D. and

JACKSONVILLE    EMERGENCY    CONSULTANTS,    P.A.    d/b/a    TITAN

EMERGENCY GROUP, have been performed or waived pursuant to Chapters 766 and 768, *Fla. Stat*.

9.    That Plaintiff is now and has been at all times material to this incident, a single individual.

10.    At all times material hereto, the Plaintiff, CHARLES M. PARSON, was a resident of Clay County, State of Florida.  All treatment and acts of negligence alleged herein were committed within Clay County, State of Florida, at ORANGE PARK MEDICAL CENTER, and Alachua County, State of Florida at the Malcom Randall VA Medical Center.

11.    At all times material hereto, ORANGE PARK MEDICAL CENTER, INC., held itself out to the public as a healthcare provider with facilities, competent staff, trained personnel and physicians, to provide appropriate medical care, evaluation and radiological services for those individuals who came to ORANGE PARK MEDICAL CENTER including those who came to ORANGE PARK MEDICAL CENTER with the conditions such as those suffered by CHARLES M. PARSON.

12.    At all times material hereto, ORANGE PARK MEDICAL CENTER, was directly liable for its own negligent acts and omissions and was vicariously liable for the negligent acts and omissions of its employees, agents and apparent agents, including DR. TILLER, and those other mid level providers who rendered medical care in the emergency room, acting within the course and scope of such relationship and in furtherance of ORANGE PARK MEDICAL CENTER's business pursuits.

13.     At all times material hereto, Defendant, BRYCE TILLER, M.D., was a physician licensed under the laws of Florida and transacting his business in Clay County, Florida, and holding himself out to the public as an emergency physician possessing the same level of skill and expertise in that field as any other qualified emergency physician in Clay County, Florida or any other similar medical community.

14.     At all times material hereto, DR. TILLER was an employee, agent, apparent agent, servant, owner and/or director of JACKSONVILLE EMERGENCY CONSULTANTS, P.A. d/b/a TITAN EMERGENCY GROUP and was acting within the course and scope of his relationship with JACKSONVILLE EMERGENCY CONSULTANTS, P.A. d/b/a TITAN EMERGENCY GROUP and in the furtherance of JACKSONVILLE EMERGENCY CONSULTANTS, P.A. d/b/a TITAN EMERGENCY GROUP's business pursuits.

15.     At all times material hereto, JACKSONVILLE EMERGENCY CONSULTANTS, P.A. d/b/a TITAN EMERGENCY GROUP was directly liable for its own negligent acts and omissions and was vicariously liable for the negligent acts and omissions of its agents, apparent agents, servants, employees, owners and/or directors, including but not limited to, DR. TILLER, acting within the course and scope of such relationship, and in furtherance of JACKSONVILLE EMERGENCY CONSULTANTS P.A. d/b/a TITAN EMERGENCY GROUP's business pursuits.

## FACTS COMMON TO ALL COUNTS

16.     CHARLES M. PARSON went to the emergency department of ORANGE PARK MEDICAL CENTER in Orange Park, Florida, at 3:30 a.m. on October 28, 2012, with complaints of chest and back pain.

17.     Prior to discharge, MR. PARSON was given a number of tests to determine if his pain was cardiac in origin.  However, the tests were all negative for cardiac etiology and MR. PARSON was discharged from the ORANGE PARK MEDICAL CENTER emergency department.

18.     By November 1, 2012, the pain in his chest and back had intensified to the point that his family drove him back to the emergency room at ORANGE PARK MEDICAL CENTER at 11:30 p.m.

19.     Blood tests were conducted, and MR. PARSON's white blood cell count, elevated on October 28, was now significantly elevated at 16.  Moreover, his sodium, potassium and chloride levels were abnormally decreased while his blood urea nitrogen and creatinine were both abnormally elevated.

20.     Although an electrocardiogram again was negative for cardiac disease during the November 1, 2012 admission, the cause of MR. PARSON's chest and back pain was not determined, and MR. PARSON was discharged in the early morning hours of November 2, 2012, by DR. BRYCE TILLER and ORANGE PARK MEDICAL CENTER, tachycardic, and with an elevated blood pressure of 174/82.

21.     Crippled by the pain and now developing weakness and difficulty urinating, in the early morning hours of November 4, 2012, MR. PARSON was driven by his family to the Malcom Randall VA in Gainesville, Florida.  MR. PARSON was

seen in the emergency room at 2:12 a.m. by Dr. James E. Steele, who learned that MR. PARSON had been a recent patient of ORANGE PARK MEDICAL CENTER, and who now was presenting with left shoulder pain, radiating into his chest. Dr. Steele placed an order for MR. PARSON to be admitted to the medicine floor.

22.     The VA clearly identified that this pain was 10 on a 10 point scale, that it was in his left back, shoulder and thorax, and was constant and stabbing.  In his history and physical note of 5:24 a.m. on November 4, Dr. Robert D. Carroll unequivocally documents that the shoulder pain has been constant for a week, no amount of medication has been successful at resolving the pain, and just today MR. PARSON felt a "funny sensation in his back" when urinating.

23.     By 5:42 a.m. on the day of his admission, November 4, 2012, MR. PARSON had to be catheterized due to his inability to voluntarily urinate, and  it had been determined through vascular ultrasound that there was no evidence of deep venous thrombosis throwing blood clots to his lungs and causing his sharp pain in his back and shoulder.

24.     Cardiac enzymes also were negative for a myocardial infarction. Consequently, by shortly after 9 a.m. on November 4, Dr. Carroll was doubtful the pain MR. PARSON was experiencing was cardiac in nature. Dr. Carroll also doubted MR. PARSON was experiencing the effects of a pulmonary embolism. However, the only conclusion Dr. Carroll could draw was that MR. PARSON had a urinary tract infection.

25.     At 7:29 a.m. on November 5, MR. PARSON told his nurse, Alfred W. Kuntz, that he could not move his legs. Nothing was done by the nurse except to

7

instruct MR. PARSON to bring the paraplegia to the attention of his physician when he rounded later that morning.

26.     At 7:49 a.m. on November 5, Nurse Christopher L. Wall noted in MR. PARSON's chart that he was complaining of weakness in his legs, but that he could still move the legs. MR. PARSON had been without food awaiting another study to further evaluate the possibility he had a pulmonary issue.

27.     Although the paraplegia had been discovered early in the morning of November 5, it was not until after noon that the VA got neurology involved.  William J. Triggs, the attending neurologist, saw MR. PARSON, examined him, and at 12:36 p.m. still believed there was a potential window for neurosurgical intervention.  He ordered an immediate MRI.

28.     At 1:10 p.m. on November 5, 2012, MR. PARSON was taken to radiology for an MRI of his spine. It was only then that it was discovered that MR. PARSON had an epidural abscess lesion pressing on his spine from T3 to T8.

29.     However, a neurosurgical consult with Dr. Jerzy Rokicki and Dr. Richard J. Lister was not obtained until approximately 7 p.m. on November 5.

30.     Plans were being made to emergently transfer MR. PARSON to surgery, but at 8 p.m. those plans changed, resulting in a further delay in getting the pressure removed from MR. PARSON's spine.

31.     It was not until 9:50 p.m. on November 5, 2012, that the VA transferred MR. PARSON across the street to Shands Teaching Hospital and the University of

Florida neurosurgery service, which had been asked to perform the procedure to surgically remove the abscess pressing on MR. PARSON's spine.

32.    In the early morning hours of November 6, 2012, Dr. Maryam Rahman performed a six level thoracic laminectomy and decompression with a debridement of the epidural mass pressing on MR. PARSON's spinal cord.

33.    Cultures of the abscess were positive for staph aureus, and MR. PARSON was placed on intravenous vancomycin, transferred back to the Randall VA, and then spent months at the spinal injury center at the James A. Haley VA in Tampa, Florida.

34.    Today, MR. PARSON suffers from catastrophic injuries as described in Section 766.118, *Fla. Stat*., including, but not limited to, permanent paraplegia, which are a direct result of the failure of his medical providers at ORANGE PARK MEDICAL CENTER, and the Malcom Randall VA Medical Center to diagnose and treat his infectious abscess in a timely manner.

35.    At all times during which MR. PARSON was seen in the emergency room at ORANGE PARK MEDICAL CENTER, including its emergency room, he did not have any prior relationship with the health care providers who attended him, including DR. TILLER.  These providers were all selected by ORANGE PARK MEDICAL CENTER and provided by it to MR. PARSON as being fully qualified to make appropriate medical decisions and render appropriate medical care to him.  These representations were made with the intent of encouraging him and members of the public to utilize ORANGE PARK MEDICAL CENTER for his care.

36.     MR. PARSON relied on these representations as set out in paragraphs 11, 12, 13 and 35 in electing to seek medical care at ORANGE PARK MEDICAL CENTER and to allow DR. TILLER and the medical staff there to render care and attention to him as they deemed appropriate, all of which was to his detriment.

**COUNT I**
**CLAIM AGAINST THE UNITED STATES OF AMERICA**

Plaintiff readopts and realleges each and every allegation set forth in Paragraphs 1 through 36 of the general allegations and makes them a part of this Count I, and further alleges:

37.     At all times material to this cause there existed a healthcare provider-patient relationship between Plaintiff, CHARLES M. PARSON, the Malcom Randall VA Medical Center, Gainesville, Florida, and all of the healthcare providers who were involved in providing and/or failing to provide medical care and treatment to Plaintiff, CHARLES M. PARSON, while a patient at Malcom Randall VA Medical Center, Gainesville, Florida.

38.     At all times material hereto, all of those medical care providers assigned to provide care for the patients of the Malcom Randall VA Medical Center, including physicians, nurses, technicians, nurses' assistants, administrators, and other healthcare staff, owed a duty of care to provide medical care and treatment to Plaintiff, CHARLES M. PARSON, which met the prevailing professional standard of care for similar healthcare providers.

10

39.     The health care providers involved in the care of Plaintiff, CHARLES M. PARSON, were negligent and failed to meet the prevailing professional standard of care in their care and treatment of Plaintiff, CHARLES M. PARSON, in the following particular respects:

A.     Failure to obtain a thorough history of CHARLES M. PARSON'S prior medical treatment and week long history of physical complaints as well as between the time of his admission on November 4, 2012 and his transfer to Shands Teaching Hospital on November 5, 2012;

B.     Failure to timely arrange the appropriate consults between the time of his admission on November 4, 2012 and his transfer to Shands Teaching Hospital on the evening of November 5, 2012 to timely relieve the cord compression that has now left CHARLES M. PARSON paralyzed;

C.     Failure to monitor and otherwise perform appropriate physical examinations and assessments of CHARLES M. PARSON's signs and symptoms between the time of his admission on November 4, 2012 and his transfer to Shands Teaching Hospital on the evening of November 5, 2012;

D.     Failure to appropriately communicate their findings to physicians in charge of CHARLES M. PARSON's care;

E.     Failure to either notify CHARLES M. PARSON's treating physicians in an appropriate and timely manner and/or notify their own supervisors that appropriate care was required and/or was not being rendered to CHARLES M. PARSON between the time of his admission on November 4,

11

2012 and his transfer to Shands Teaching Hospital on the evening of November 5, 2012;

F.      Failure to order and/or ensure that appropriate tests were timely performed between the time of his admission on November 4, 2012 and his transfer to Shands Teaching Hospital on the evening of November 5, 2012 that would have made the diagnosis of the cord compression that has left CHARLES M. PARSON paralyzed;

G.      Failure to make an appropriate and timely diagnosis between the time of his admission on November 4, 2012 and his transfer to Shands Teaching Hospital on the evening of November 5, 2012;

H.      Failure to arrange and perform surgery to remove the epidural abscess compressing CHARLES M. PARSON'S spinal cord in a timely and appropriate manner between the time of his admission on November 4, 2012 and his transfer to Shands Teaching Hospital on the evening of November 5, 2012;

I.      Failure to render timely and appropriate medical care between the time of his admission on November 4, 2012 and his transfer to Shands Teaching Hospital on the evening of November 5, 2012;

40.     As a direct and proximate result of the acts and/or omissions by the employees, agents, and servants of the UNITED STATES OF AMERICA, Plaintiff, CHARLES M. PARSON was permanently and catastrophically injured in and about his body.  He suffered aggravation of a pre-existing condition, pain and suffering, disability, scarring, mental anguish, the loss of the enjoyment of life, in the past and the

future, incurred medical expenses in the past and to continue into the future, all of which said injuries and damages are permanent.  He sustained the following damages, all of which occurred in the past and will continue indefinitely into the future:

      a.      Personal injury and resulting pain and suffering;

      b.      Disability;

      c.      Disfigurement;

      d.      Mental anguish;

      e.      Loss of the capacity for the enjoyment of life;

      f.      Expense of hospitalization, medical and nursing care and treatment and expenses associated with his disabilities;

      g.      Loss of earnings;

      h.      Loss of the ability to earn money;

      i.      Aggravation of a previously existing condition.

WHEREFORE, Plaintiff, CHARLES M. PARSON, demands judgment for damages against the Defendant, UNITED STATES OF AMERICA, in the amount of $20 million ($20,000,000) Dollars, for compensatory damages, costs, prejudgment interest on medical bills, and such other relief as this Court deems just.

**COUNT II**
**CLAIM AGAINST ORANGE PARK MEDICAL CENTER, INC.**

Plaintiff readopts and realleges each and every allegation set forth in Paragraphs 2, and 7 through 36 of the general allegations and makes them a part of this Count II, and further alleges:

13

41.    At all times material hereto, ORANGE PARK MEDICAL CENTER, directly and by and through its employees, its agents and its apparent agents, including DR. TILLER, had a duty to CHARLES M. PARSON to provide appropriate medical care and treatment to CHARLES M. PARSON in accordance with the prevailing professional standards of care for hospitals providing similar services, in light of all the relevant circumstances in the treatment of CHARLES M. PARSON.

42.    Notwithstanding the duties owed, as set out above, ORANGE PARK MEDICAL CENTER did or failed to do one or more of the following acts, any or all of which were departures from the acceptable, professional standards of care in Clay County, Florida or any other similar medical community.

A.    Failure to take an appropriate history from CHARLES M. PARSON;

B.    Failure to conduct proper examinations of CHARLES M. PARSON;

C.    Failure to do a proper assessment on CHARLES M. PARSON;

D.    Failure to appropriately communicate their findings to physicians in charge of CHARLES M. PARSON's care;

E.    Failure to initiate the chain of command to prevent a premature discharge of CHARLES M. PARSON from the hospital without a diagnosis;

F.    Failure to ensure that CHARLES M. PARSON was admitted to ORANGE PARK MEDICAL CENTER for appropriate workup, diagnosis and treatment;

G.    Failure to make an appropriate and timely diagnosis;

14

H.    Failure to obtain appropriate consults in a timely manner;

I.     Failure to render appropriate and timely care including a transfer if care
       could not be rendered in that facility;

J.     Failure to otherwise provide that level of care, skill and treatment which
       in light of all relevant surrounding circumstances, is recognized as
       acceptable and appropriate by reasonable and prudent similar healthcare
       providers.

43.    As a direct and proximate result of the acts and/or omissions by

ORANGE PARK MEDICAL CENTER, Plaintiff, CHARLES M. PARSON was

permanently and catastrophically injured in and about his body.  He suffered

aggravation of a pre-existing condition, pain and suffering, disability, scarring, mental

anguish, the loss of the enjoyment of life, in the past and the future, incurred medical

expenses in the past and to continue into the future, all of which said injuries and

damages are permanent.  He sustained the following damages, all of which occurred in

the past and will continue indefinitely into the future:

a.    Personal injury and resulting pain and suffering;

b.    Disability;

c.    Disfigurement;

d.    Mental anguish;

e.    Loss of the capacity for the enjoyment of life;

f.    Expense of hospitalization, medical and nursing care and treatment and
       expenses associated with his disabilities;

g.      Loss of earnings;

h.      Loss of the ability to earn money;

i.      Aggravation of a previously existing condition.

WHEREFORE the Plaintiff, CHARLES M. PARSON, demands judgment for all damages and costs allowed by law against the Defendant, ORANGE PARK MEDICAL CENTER, and further demands a trial by jury of all issues so triable by right.

**COUNT III**
**CLAIM AGAINST BRYCE TILLER, M.D.**

Plaintiff readopts and realleges each and every allegation set forth in Paragraphs 1 through 36 of the general allegations and makes them a part of this Count III, and further alleges:

44.     At all times material hereto, Defendant, DR. TILLER, had a duty to CHARLES M. PARSON to provide proper medical care and treatment in accordance with the prevailing professional standards of care for physicians practicing in the specialty of emergency medicine in light of all the relevant circumstances in the treatment of CHARLES M. PARSON.

45.     Notwithstanding the duties owed, DR. TILLER did or failed to do one or more of the following acts, any and all of which were departures from the acceptable professional standards of care in Clay County, FL or any other similar medical community:

A.      Failure to take an appropriate history from CHARLES M. PARSON;

16

B.      Failure to conduct proper examinations of CHARLES M. PARSON;

C.      Failure to order appropriate diagnostic testing for CHARLES M.

        PARSON;

D.      Failure to make a diagnosis of and provide appropriate treatment for

        CHARLES M. PARSON's evolving epidural abscess before it rendered

        him paraplegic;

E.      Failure to ensure that CHARLES M. PARSON was admitted to

        ORANGE PARK MEDICAL CENTER for appropriate workup,

        diagnosis and treatment;

F.      Failure to obtain appropriate consults in a timely manner;

G.      Failure to render appropriate and timely care including a transfer if care

        could not be rendered in that facility;

H.      Failure to otherwise provide that level of care, skill and treatment which

        in light of all relevant surrounding circumstances, is recognized as

        acceptable and appropriate by reasonable and prudent similar healthcare

        providers.

46.     As a direct and proximate result of the acts and/or omissions by BRYCE

TILLER, M.D., Plaintiff, CHARLES M. PARSON was permanently and

catastrophically injured in and about his body.  He suffered aggravation of a pre-

existing condition, pain and suffering, disability, scarring, mental anguish, the loss of

the enjoyment of life, in the past and the future, incurred medical expenses in the past

and to continue into the future, all of which said injuries and damages are permanent.

17

He sustained the following damages, all of which occurred in the past and will continue

indefinitely into the future:

      a.     Personal injury and resulting pain and suffering;

      b.     Disability;

      c.     Disfigurement;

      d.     Mental anguish;

      e.     Loss of the capacity for the enjoyment of life;

      f.     Expense of hospitalization, medical and nursing care and treatment and

            expenses associated with his disabilities;

      g.     Loss of earnings;

      h.     Loss of the ability to earn money;

      i.     Aggravation of a previously existing condition.

     WHEREFORE the Plaintiff, CHARLES M. PARSON, demands judgment for

all damages and costs allowed by law against the Defendant, BRYCE TILLER, M.D.,

and further demands a trial by jury of all issues so triable by right.

**COUNT IV**
**CLAIM AGAINST JACKSONVILLE EMERGENCY CONSULTANTS, P.A.**
**d/b/a TITAN EMERGENCY GROUP**

     Plaintiff readopts and realleges each and every allegation set forth in Paragraphs

1 through 36 of the general allegations and makes them a part of this Count IV and

further alleges:

     47.    At all times material hereto, JACKSONVILLE EMERGENCY

CONSULTANTS, P.A. d/b/a TITAN EMERGENCY GROUP, by and through its

18

agents, servants, employees, owners and/or directors, including, but not limited to, DR. TILLER, had a duty to CHARLES M. PARSON to provide appropriate medical care and treatment to CHARLES M. PARSON in accordance with the prevailing professional standards of care for similar health care providers, in light of all relevant circumstances in the treatment of CHARLES M. PARSON.

48.     Notwithstanding the duties owed, JACKSONVILLE EMERGENCY CONSULTANTS, P.A. d/b/a TITAN EMERGENCY GROUP, by and through its agents, servants, employees, owners and/or directors, including, but limited to, DR. TILLER, did or failed to do one or more of the following acts, any or all of which were departures from acceptable professional standards of care in Clay County, Florida, or any other similar medical community:

A.     Failure to take an appropriate history from CHARLES M. PARSON;

B.     Failure to conduct proper examinations of CHARLES M. PARSON;

C.     Failure to order appropriate diagnostic testing for CHARLES M. PARSON;

D.     Failure to make a diagnosis of and provide appropriate treatment for CHARLES M. PARSON's evolving epidural abscess before it rendered him paraplegic;

E.     Failure to ensure that CHARLES M. PARSON was admitted to ORANGE PARK MEDICAL CENTER for appropriate workup, diagnosis and treatment;

F.     Failure to obtain appropriate consults in a timely manner;

19

G.   Failure to render appropriate and timely care including a transfer if care could not be rendered in that facility;

H.   Failure to otherwise provide that level of care, skill and treatment which in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonable and prudent similar healthcare providers.

49.   As a direct and proximate result of the acts and/or omissions by JACKSONVILLE EMERGENCY CONSULTANTS, P.A. d/b/a TITAN EMERGENCY GROUP, Plaintiff, CHARLES M. PARSON was permanently and catastrophically injured in and about his body.  He suffered aggravation of a pre-existing condition, pain and suffering, disability, scarring, mental anguish, the loss of the enjoyment of life, in the past and the future, incurred medical expenses in the past and to continue into the future, all of which said injuries and damages are permanent. He sustained the following damages, all of which occurred in the past and will continue indefinitely into the future:

a.   Personal injury and resulting pain and suffering;

b.   Disability;

c.   Disfigurement;

d.   Mental anguish;

e.   Loss of the capacity for the enjoyment of life;

f.   Expense of hospitalization, medical and nursing care and treatment and expenses associated with his disabilities;

g.      Loss of earnings;

h.      Loss of the ability to earn money;

i.      Aggravation of a previously existing condition.

WHEREFORE the Plaintiff, CHARLES M. PARSON, demands judgment for all damages and costs allowed by law against the Defendant, JACKSONVILLE EMERGENCY CONSULTANTS, P.A. d/b/a TITAN EMERGENCY GROUP, and further demands a trial by jury of all issues so triable by right.

## <u>CERTIFICATE OF COUNSEL</u>

The undersigned hereby certified that a reasonable investigation has taken place, which has given rise to a good faith belief that grounds exist for an action against the named Defendants for medical negligence.

Dated: <u>February 13, 2014</u>

/s/ Joseph M. Taraska

_____
Joseph M. Taraska, Esquire
Florida Bar No. 235571
jtaraska@forthepeople.com
A. Scott Noecker, Esquire
Florida Bar No. 705810
snoecker@forthepeople.com
MORGAN & MORGAN, P.A.
16th Floor
20 North Orange Avenue
Orlando, Florida 32801
Phone (407) 420-1414
Fax (407) 422-8925
Secondary email addresses:
nellington@forthepeople.com
dmassie@forthepeople.com
***Attorneys for the Plaintiff***